**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JANICE L. WITCHER,

                Plaintiff,

                                                                 Case No. 3:14-cv-1221-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Janice L. Witcher ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of "[b]ack [d]eterioration," "[h]igh [b]lood [p]ressure," "[d]iabetes," "[a]sthma," "[s]leep [a]pnea," and "[h]ernia." See Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed February 4, 2014, at 204. (capitalization and emphasis omitted). On May 25, 2011, Plaintiff filed an application for DIB, alleging an onset of disability of May 19, 2011. Tr. at 168-70. Plaintiff's application was denied initially, Tr. at 55-62, 73-74, and on reconsideration, Tr. at 63-72, 86-87.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 17), filed February 4, 2015; Reference Order (Doc. No. 18), entered February 5, 2015.

On December 20, 2012, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 29-54. At the time of the hearing, Plaintiff was sixty-two (62) years old. Tr. at 33. On January 28, 2013, the ALJ issued a Decision finding Plaintiff not disabled from May 19, 2011 through the date of the Decision. Tr. at 14-22. Plaintiff then requested review by the Appeals Council. Tr. at 8-9. On August 7, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On October 7, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: (1) "[w]hether the ALJ erred in determining that [Plaintiff] has the residual functional capacity to perform sedentary work after failing to provide appropriate weight to the opinion of the treating physician[2] and failing to adequately consider and weigh all the pertinent evidence and opinions in the record"; and (2) "[w]hether the ALJ erred in finding that [Plaintiff] has the residual functional capacity to perform sedentary work after failing to adequately assess [Plaintiff's] credibility when she suffered from pain caused by orthopedic conditions." Pl.'s Brief Addressing the Merits of Appeal (Doc. No. 23; "Pl.'s Br."), filed May 5, 2015, at 2-3, 12-19. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") on July 6, 2015. After a thorough review of the entire record and the parties' respective memoranda, the

---

[2] In her statement of the issues, Plaintiff does not identify, by name, the "treating physician" referenced in her first issue. See Pl.'s Br. at 2. In her argument, however, she contends the ALJ gave only "'little weight'" to the opinion of the treating physician, Dr. [Michael] Sharpe." Pl.'s Br. at 13.

undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four of the five-step inquiry, where his inquiry ended based on his step four finding. See Tr. at 16-22. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 19, 2011, the alleged onset date." Tr. at 16 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease, bilateral knee osteoarthritis, diabetes mellitus, hypertension, obesity and asthma." Tr. at 16 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 16 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR [§] 404.1567(a) except she can frequently climb ramps and stairs, balance, kneel, crouch and crawl. [Plaintiff] may occasionally climb ladders, ropes and scaffolds and stoop. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, machinery and heights.

Tr. at 17 (emphasis omitted). At step four, the ALJ found that Plaintiff is "capable of performing past relevant work as a[n] Education Specialist and Customer Service Representative." Tr. at 21-22. (emphasis omitted). Because the ALJ found Plaintiff capable of performing her past relevant work, the ALJ was not required to and did not proceed to step five. The ALJ concluded that Plaintiff "has not been under a disability . . . from May 19, 2011 through the date of th[e] [D]ecision." Tr. at 22 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met

when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As indicated above, Plaintiff raises two issues before this Court.  The first concerns the ALJ's analysis of the opinions of Plaintiff's treating physician and other medical providers of record, and the second concerns the ALJ's credibility finding.  Pl.'s Br. at 2-3, 12-19. These issues are addressed in turn below.

### A. Medical Opinions

Plaintiff argues that the ALJ "fail[ed] to provide appropriate weight to the opinion of [Dr. Sharpe, Plaintiff's] treating physician and fail[ed] to adequately consider and weigh all the pertinent evidence and opinions in the record."  Pl.'s Br. at 12.  In response, Defendant submits that the ALJ appropriately stated reasons for discounting Dr. Sharpe's opinions. Def.'s Mem. at 7-10.  As for the other medical providers, Defendant argues that the ALJ

discussed the treatment records from these doctors, but because none of them provided any opinions, there was no need to "weigh non-existent opinions." Id. at 10-11.

### 1. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[5] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

### 2. Dr. Sharpe

As noted above, Plaintiff's alleged onset of disability is May 19, 2011. Tr. at 168. According to the records contained in the administrative transcript, Plaintiff has been treating with Dr. Sharpe since at least 2006. See Tr. at 843. In the visit of August 30, 2006, Plaintiff presented with a chief complaint of right ankle pain from "[falling] down steps last Friday." Tr. at 843. In her next visit of October 23, 2006, Plaintiff had complaints regarding her right ankle and back pain. Tr. at 842. In November and December 2006, she was seen for complaints of asthma and sinus infection, respectively. Tr. at 839, 840.

On February 19, 2007, Plaintiff returned for "recheck on her hypertension and chronic lower back pain." Tr. at 836. She was seen again in 2007 on May 4, June 8, August 16, and

November 14, with various complaints related to her glucose levels, possible kidney infection, shortness of breath, sinus infection, and weight management. Tr. at 832-35.

On March 14, 2008, Plaintiff visited Dr. Sharpe with complaints of back pain, and in April 2008, she was seen for swelling in her legs. Tr. at 828, 829. On July 18 and 22, 2008, she was seen for a pre-op physical before arthroscopic surgery on her left shoulder. Tr. at 826, 827. Plaintiff was seen by Dr. Sharpe for sinus complaints on October 2 and 28 and for pink eye on December 18, 2008. Tr. at 821, 822, 823.

Plaintiff saw Dr. Sharpe for cold and sinus complaints in March, July, and November 2009. Tr. at 815, 818, 820. Plaintiff saw Dr. Sharpe for loss of appetite on July 13, 2009, and swelling in her ankles and hands in August and December 2009, respectively. Tr. at 814, 816-17. Plaintiff was seen again for sinus complaints in 2010 on February 5, April 26, and May 3. Tr. at 807-10, 813. Plaintiff also saw Dr. Sharpe on February 23, 2010 for right hand burns, on May 10, 2010 for abdominal pain, and on September 3, 2010 for right foot pain. Tr. at 803, 805, 811.

On December 17, 2010, Plaintiff presented with complaints of left-sided back pain. Tr. at 800. Dr. Sharpe noted that "this could be a muscle strain[,] however if the pain persist[s] [Plaintiff] is to follow up early next week." Tr. at 801. The next record of treatment is dated May 27, 2011, which indicates Plaintiff presented to Dr. Sharpe with a complaint of shortness of breath and follow-up on her hypertension, diabetes and asthma. Tr. at 798-99.

Plaintiff was seen again on October 13, 2011, with complaints of right hip pain and seeking medication refills. Tr. at 796. Dr. Sharpe's assessment at that time was "[d]iabetes mellitus type II," "[b]ack pain," [a]sthma," "GERD with esophagisit," [h]ypertension." Tr. at

797. Dr. Sharpe prescribed Percocet, and Plaintiff was to return for follow up in six months. Tr. at 797.

On November 3, 2011, Plaintiff was seen by Dr. Sharpe for "[s]inus infection x1wk." and [d]isability forms." Tr. at 773. Plaintiff saw Dr. Sharpe two weeks later on November 17, 2011, requesting shots because she was "going out of [the] country." Tr. at 769.

On November 29, 2011, Dr. Sharpe completed a Physical Residual Functional Capacity Questionnaire. Tr. at 521-25. He noted a diagnosis of "back problems" with symptoms of "severe pain." Tr. at 521. He opined that Plaintiff can only sit thirty minutes at one time and stand twenty minutes at one time. Tr. at 522. He further opined that Plaintiff can only sit and stand less than two hours each in an eight-hour workday. Tr. at 523. Dr. Sharpe indicated that Plaintiff would need a job that permitted shifting at will from sitting to standing and one that would allow her to take breaks every thirty minutes. Tr. at 523. He further indicated that she can never twist, stoop, crouch, squat, climb ladders or stairs. Tr. at 524. Dr. Sharpe noted that Plaintiff has significant limitations with reaching, handling and fingering. Tr. at 524. She can grasp, turn and twist objects 40% with her right or left hand and is able to do fine manipulation with her fingers 50% of the time in an eight-hour workday. Tr. at 524. She can only reach with her arms 10% of the time on the left and right. Tr. at 542.

On December 8, 2011, Plaintiff presented to Dr. Sharpe with complaints of "[s]inus infection x2d," and she was seen on February 14, 2012 for "poss[ible urinary track infection]" Tr. at 766, 767. On March 20, 2012, Plaintiff presented for a pre-op exam as she was

"planning a bilateral knee replacement . . . but will start [on] the left." Tr. at 764-65. On that date, "[h]er only complaint [was] of joint pain." Tr. at 764.

In his Decision, the ALJ discussed Dr. Sharpe's treatment and opinion as follows:

> In May 2011, [Plaintiff] saw her primary care physician, Michael Sharpe, M.D., for shortness of breath. [Plaintiff] reported she needed a refill of her albuterol inhaler and that when she uses Advair she has less need for the albuterol. Dr. Sharpe noted [Plaintiff] was taking her hypertension medication as prescribed and that she monitored her blood sugar for her diabetes, with her blood sugar usually below 150. Dr. Sharpe diagnosed [Plaintiff] with diabetes mellitus type II, GERD with esophagitis, CHR maxillary sinusitis, hypertension and asthma. Dr. Sharpe referred her for pain management in August 2012 due to lower back pain.
>
> Dr. Sharpe completed a physical [RFC] questionnaire in which he stated [Plaintiff] suffers from back problems and indicated her prognosis as poor. Dr. Sharpe opined [Plaintiff] could walk one city block without rest or severe pain, sit for 30 minutes at a time, stand for 20 minutes at one time and sit, stand and walk less than two hours total in an eight-hour workday. He further opined [Plaintiff] needs a job that permits shifting positions at will and unscheduled breaks every 30 minutes. Dr. Sharpe said [Plaintiff] could occasionally lift ten pounds or less, rarely lift 20 pounds and never lift 50 pounds. He further stated she could never twist, stoop, crouch, squat and climb ladders and stairs. Dr. Sharpe opined [Plaintiff] could grasp, turn and twist objects 40 percent of an eight-hour workday with her right and left hands, perform fine manipulation with her fingers 50 percent of the workday and spend 10 percent of the workday reaching. I give Dr. Sharpe's opinions little weight as they are inconsistent with his treatment records, the objective medical evidence and the record as a whole. Dr. Sharpe's treatment notes indicate he treated [Plaintiff] mainly for sinus problems and routine check-ups. Dr. Sharpe referred [Plaintiff] to orthopedics and pain management for her back and knee problems and his records do not indicate she is receiving more than minimal and conservative treatment for her diabetes, hypertension and asthma.

Tr. at 18, 20 (citations omitted).

Plaintiff argues that, as a treating physician, Dr. Sharpe's opinions should have been given substantial weight unless "good cause" was shown to the contrary. Pl.'s Br. at 13. The ALJ noted in his Decision that he gave Dr. Sharpe's opinions "little weight" as they are

-11-

"inconsistent with [the doctor's] treatment records, the objective medical evidence and the record as a whole." Tr. at 20.  The ALJ went on to state that Dr. Sharpe treated Plaintiff "mainly for sinus problems and routine check-ups." Tr. at 20.  The undersigned notes that Dr. Sharpe's records reflect Plaintiff was seen at various times for complaints of back pain prior to the alleged onset date.  See, e.g., Tr. at 800 (2010), 829 (2008), 836 (2007), 842 (2006).  However, other than prescribing medication and referral to others,[6] there appears to be no other treatment rendered by Dr. Sharpe for Plaintiff's complaints of back pain.  And, a significant portion of the treatment was, as Defendant points out, related to problems involving her sinus, hypertension, diabetes and other conditions.  See, e.g., Tr. at 798-99, 807-10, 813, 815, 818-23, 828, 832-35, 839-43.

Plaintiff fails to identify any findings in Dr. Sharpe's records, or any other provider's records, that support the extreme limitations assessed by Dr. Sharpe.  For example, in the records of Plaintiff's post-op visit of April 30, 2012, Plaintiff reported to Gavan Duffy, M.D., that "her pain is getting better and better" and that "[s]he continues to do home therapy and is making good progress." Tr. at 737.  Additionally, in the treatment records of Syed Hussain, M.D., who treated Plaintiff for complaints of, among other things, low back pain, it was noted that the medication and epidural injections were working to lessen Plaintiff's pain.  See, e.g., Tr. at 405, 408, 411, 414.

It appears from a review of the Decision that the ALJ appropriately considered the medical evidence and the record as a whole.  Thus, the undersigned concludes that the ALJ

---

[6] A treatment record dated October 22, 2012, revealed Plaintiff presented to Arkham Rehman, M.D., upon referral by Dr. Sharpe for evaluation of "[l]ower back pain radiating down bilateral lower extremities." Tr. at 781 (some capitalization omitted).

stated adequate reasons for discounting Dr. Sharpe's opinions and finds the ALJ's Decision is supported by substantial evidence.

### 3. Other Providers for Plaintiff's Orthopedic Conditions

Plaintiff also contends that the medical records reflect that "she was treated by several providers for her orthopedic conditions, namely Dr. [Timothy] Sternberg, Dr. [Rahul] Deshmukh, Dr. Duffy, Dr. [Robert] Hurford, [Jr.,] and Dr. Rehman," but "the ALJ [did] not indicate the weight he assigned to any of these opinions." Pl.'s Br. at 14. Specifically, Plaintiff claims error because the "ALJ should have stated the weight he assigned to all of [her] treating physicians, but he did not." Id. at 15. In response, Defendant notes that "Plaintiff . . . fails to identify any specific statement from these doctors that the ALJ should have evaluated[,] and . . . none of these doctors offered a medical source statement" Def.'s Mem. at 10. Additionally, Defendant argues that "the ALJ thoroughly discussed the treatment records from these five doctors and took their findings into account when assessing Plaintiff's RFC." Id. at 11 (referring to Tr. at 18-20).

In reviewing the Decision, the undersigned finds that the ALJ discussed in detail the medical evidence, including the records from these five doctors. See Tr. at 18-20. As noted above, the Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources"). Plaintiff fails to point to a medical

opinion from any of these five doctors that was not evaluated by the ALJ or that differed from the limitations contained in the ultimate RFC assessed. Accordingly, the undersigned finds no error in the ALJ's discussion regarding these doctors.

## B. Credibility Finding

Plaintiff argues that the ALJ's credibility finding is "nothing more than boiler plate type language," and according to Plaintiff "does not offer enough reasoning to support the ALJ's determination that [Plaintiff] is not credible." Pl.'s Br. at 18. Defendant responds that the ALJ articulated specific reasons for discrediting Plaintiff. Def.'s Br. at 14-17. Based upon a review of the Decision and the record, the undersigned finds that the ALJ stated adequate reasons for finding Plaintiff's statements less than credible and that the ALJ's credibility finding is supported by substantial evidence.

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." Tr. at 18. After discussing the medical evidence, the ALJ elaborated on his credibility assessment and concluded that:

> [Plaintiff's] allegations regarding her symptoms and limitations [are] not credible to the extent she claims she is precluded from all work activity. In sum, the above [RFC] assessment is supported by the following. First, [Plaintiff] has described daily activities which are not totally limited and are consistent with the [RFC] reached in this [D]ecision. [Plaintiff] testified that she lives alone and that she cooks, does laundry and shops for groceries. She also said she attends church every Sunday. She stated she traveled to the Bahamas and Las Vegas and that she can sit for up to three hours without pain, which is consistent with the [RFC] assessed above.
>
> Second, although [Plaintiff] has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in

>nature.  Her medical records show that her hypertension, asthma and diabetes are all well controlled on medication.  She testified that she only takes pills for her diabetes because she changed her diet and lost weight at her doctor's advisement because she did not want to have to take insulin shots. [Plaintiff's] main complaints are in relation to her lower back and bilateral knee pain. She underwent a total knee replacement on her right knee and reported that she was able to sleep through the night without pain. Her surgeon, Dr. Duffy, noted that she reported her pain was getting "better and better" and that she was doing well and making good progress.  Further, she testified she has not yet scheduled her left knee for replacement, indicating the replacement of her right knee afforded her sufficient relief from her bilateral knee pain. [Plaintiff] also testified that she has lower back pain, however she said her pain medication helps with her pain. An MRI of her lumbar spine in June 2012 showed mild central canal and mild-to-moderate neural foraminal narrowing. Further, during physical therapy, it was noted that [Plaintiff] did not show motivation to improve her condition. Dr. Sternberg also advised [Plaintiff] to walk at least 30 minutes a day and that unless she engaged in some form of physical exercise he would not continue opioid analgesics.
>
>Mild findings on her MRI and her lack of motivation for physical therapy indicate [Plaintiff's] symptoms are not totally disabling and that she was at least partially non-compliant with conservative treatment. While [Plaintiff's] non-compliance is not a basis for denying her  claim, it is a basis for discounting her overall credibility, as such non-compliance would not be expected were [Plaintiff's] impairments as severe or disabling as alleged, and suggests that [Plaintiff's] symptomatology is tolerable without the need to follow these recommendations.

Tr. at 20-21.

Thus, contrary to Plaintiff's contention, the ALJ went beyond merely citing "boiler plate" language to support his credibility finding.  The ALJ articulated specific reasons to support his conclusion that Plaintiff's statements are less than credible, and substantial evidence supports the credibility determination. Accordingly, the Decision is due to be affirmed on this issue.

## V.  Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 7, 2016.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jde

Copies to:

Counsel of record